Moss, Judge,
delivered the opinion of the court:
On November 1, 1917, plaintiff, the McKenzie Construction Company, entered into a cost-plus contract with the Government for /such alterations, additions, and repairs at Camp Travis, Fort Sam Houston, Texas, as might be ordered *652 from time to time in writing, within six months from the date of the contract. As compensation for its services plaintiff was to receive a fee based upon a percentage of the cost of construction varying with the amount of the total cost, in no event to exceed the sum of $15,000. It was estimated that the work required under this contract would amount to approximately $200,000. Plaintiff signed this contract and sent same to the camp quartermaster with a letter dated December 19,1917, in which it was stated—
“We do not take it that the Government would require us to do, say, $500,000 worth of work for a fee of $15,000, but that this contract is a standard contract furnished for all cantonments, and that in case thffi work should develop to be any appreciable amount greater than $187,500 within the time specified, that the Government would be willing to make a change in the contract.
“ We are not quite clear on this point and would be pleased to have you ascertain, if possible, what the Government’s attitude is on the subject. Perhaps they mean that we shall not run our expenditures over $187,500, in which case we should be advised.”
Deceiving no response to its letter, plaintiff on December 81, 1917, sent a telegram to the officer in charge of cantonment construction calling attention to the fact that the authorizations for work under the contract had already exceeded the sum of $187,500, the fee for which would almost equal the maximum fee of $15,000, and' inquiring whether or not the maximum fee could not be increased before .the contract should be finally executed. In response to this telegram plaintiff was advised by letter that the contract had already been executed and filed, and that its request could not be granted. It was further stated in said letter that “ Should the amount of work which you are required to do run to a figure which is out of all proportion to this estimated amount a supplemental agreement will be made. Should any large job come up which is also not contemplated in this contract this office will be free to make a new contract and select a new contractor if it so desires for the performance of such work.”
*653 On February 20, 1918, certain additional storehouses and hospital facilities having been authorized, the .cost of which, it was estimated, would amount to about $1,000,000, the original contract was amended by extending the period to eight months instead of six months and providing for a maximum fee of $60,000. On July 1, 1918, said contract was again amended to cover, other work not contemplated at the time the original contract was modified providing for a maximum fee of $100,000 and extending the time to June 1, 1919, or nineteen months from the date of the original contract. It was estimated that the work under this contract would cost approximately $2,000,000. This supplemental contract contained the following recital:
“At the time the said contract of November 1, 1917, was modified the contractor was informed that the cost of the alterations, additions, and repairs contemplated would not exceed $1,000,000, and a fee of not to exceed $60,000 based upon that estimate was provided; and that in the event the Government should decide to do more work at that camp, which would run out of proportion to .the estimated $1,000,000, the Government would be free either to select a new contractor or require, such additional work to be done under said contract of November- 1, 1917, as modified, in which event a supplemental agreement would be drawn increasing the maximum fee so as to make the same commensurate with the additional work ordered to be done thereunder. Additional hospital facilities and other work, not contemplated at the time the original contract was modified, have now been authorized, the cost of which will greatly exceed $1,000,000, and it is desired that said contractor shall perform the same. Therefore, this supplemental agreement is made in furtherance of said above-recited understanding between the parties to the contract of November 1, 1917, as modified.”
On August 1,1918, the parties entered into another supplemental agreement which did not, however, alter the terms of the contract, but merely set forth the names of the various camps at which work was being performed.
All work under the original and supplemental contracts, including the work for which plaintiff is now claiming payment, was completed within the contract period of nineteen months, and plaintiff received payment for all costs of the *654 work performed, together with compensation in the sum of $100,000.
It is plaintiff’s contention that in addition to the amounts already received it is entitled to recover the sum of $44,-878.42 as compensation for certain work performed by it, which it is alleged was not in contemplation when the supplemental contract of July 1, 1918, was executed. It appears that in September or October, 1918, the constructing quartermaster received instructions to construct-certain permanent hospital wards at Fort Sam Houston. Whereupon plaintiff was directed to proceed with said work. In the belief that this work was not covered by the supplemental contract of July 1, 1918, plaintiff sought to secure another supplemental contract to provide for additional compensation, and in this effort the constructing quartermaster gave his assistance. The Government, however, through its authorized contracting officer declined to execute a supplemental contract. The evidence is contradictory as to the reason assigned by the Government for its refusal to enter into a supplemental agreement. The positive statement of Colonel Shelby, who was chief of .the Contract Division of the Construction Division of the Army, was that, in his opinion, the work was in reasonable contemplation of the supplemental agreement fixing the maximum fee at $100,000.00. It was the recollection of the constructing quartermaster that when he requested the chief of the- Contract Division to make a new contract he was advised that the war was over and that the matter of an additional contract would not be considered. This point of difference, however, does not seem to be material. Plaintiff claimed that the work which it was directed to perform Avas not in contemplation of the contract and the supplements thereto. A supplemental agreement was requested by the constructing quartermaster and was denied. The vice president and general manager of plaintiff company also discussed the question with Colonel Shelby and was informed that no new contract would be made. In continuing with the work to its completion plaintiff was either proceeding under a contract which limited its compensation to $100,000 or it was *655 proceeding without any contract whatever. Plaintiff contends that the contract of November 1, 1917, construed with reference to plaintiff’s letter of December 19, 1917, and the several supplemental contracts constituted an express contract by which the Government is rendered liable for compensation for the alleged additional work. The documents referred to, taken separately or construed together, in no sense constitute a contract for an indefinite performance or an unlimited compensation. The conduct of plaintiff itself in requiring a supplemental contract on two occasions when plaintiff was directed to perform work which it believed was not in contemplation of the contract was a clear recognition on its part of the necessity of securing supplemental contracts for work not contemplated in the original or modified agreements. Plaintiff further contends that if it is not entitled to recover under the contract it should be entitled under the circumstances surrounding the whole transaction to recover a fair compensation for its services on an implied contract. The court is also reminded that the Dent Act provides for compensation in such a case as this, upon “ a fair and equitable basis.” Under the peculiar facts of this case the doctrine of implied contract could have no application. The new work was ordered to be performed by a Government officer who had no authority to make or alter a contract. When application was made to the proper officer for a supplemental contract it was refused. If the work in question had been performed under the order of an officer of the Government having authority to make contracts, but without the formality of a written contract, a case might be presented to which the principle of implied contract could apply. Plaintiff’s purpose in requesting a new agreement was to provide for additional compensation on account of work which it believed was not in contemplation of the existing contract. The plain meaning and effect of the refusal by the Government to enter into such a contract was to deny plaintiff’s claim for such additional compensation. It is clear that no implied agreement to pay the additional compensation could arise in the face of a specific refusal to enter into a written agreement having precisely the same *656 effect. The position of plaintiff on this point is obviously illogical and unsound.
If, however, the court should be of the opinion that plaintiff is entitled to recover fair, compensation in this case, as claimed by plaintiff, what would be the measure of recovery ? The record is silent on this question. The schedule of compensation under what is known as the cost-plus contract program under which plaintiff operated could not be accepted as a proper measure for arriving at fair and reasonable compensation. It is a matter of common history that under the exigencies of war and under the operation of the cost-plus system services such as that rendered by plaintiff received unusual and unprecedented remuneration. Plaintiff’s own contract, under which it was paid $100,000 for services extending over a period of less than nineteen months, is an apt example of the situation prevailing throughout the whole of the Government’s activities during the period of the war. The rates of compensation for the same services could not reasonably be expected to continue after the war had closed. The court, therefore, in the absence of any evidence as to fair compensation could not consider a recovery on that basis.
It is urged that the work which plaintiff was directed by the constructing quartermaster to perform was required for the welfare of the wounded soldiers returning from overseas, and was of an emergency nature, and that a refusal on its part to proceed with the work until a supplemental contract could be secured would have been an unpatriotic, if not a reprehensible, act. It should be mentioned, however, in this connection that when this situation arose plaintiff, as shown by the evidence, was still operating within the $100,000 fee limit. If plaintiff had renewed its request for a supplemental contract, with notice of its purpose to decline to perform any other work after the limit under the existing contract had been reached, it is reasonable to assume that a satisfactory adjustment of the matter would have been speedily reached. At any rate, ordinary prudence would have dictated such a course. In the face of the positive refusal by the Government to make the contract, plaintiff *657 without further protest continued with the work to its final completion. In the opinion of the court plaintiff is not entitled to recover, and it is so ordered.
Gem-iam, Judge; Booth, Judge; and Campbell, Chief Justice, concur.